United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 6:16-4(SSSS)-4 |
| | § | |
| RAUL BELTRAN, JR., | § | |
|   Defendant. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Raul Beltran, Jr.'s Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (D.E. 478), to which the Government has responded (D.E. 594) and Defendant has replied (D.E. 598).

### I. BACKGROUND

In 2013, a law enforcement investigation uncovered a transnational drug trafficking organization (DTO) operating from two family-owned ranches in Rio Grande City, Texas. The Beltran DTO—which had 25 members, including Defendant, his brothers, and their children—transported over 22,000 kilograms of marijuana from the Rio Grande Valley to Houston, Texas, and then on to different locations in Louisiana. They dealt with the violent prison/street gang Texas Chicano Brotherhood to purchase "ripped off" marijuana from the Gulf Cartel and paid and corrupted local law enforcement.

Starting in 2007, the Beltran DTO's primary base of operation was Defendant's ranch, where most of the marijuana was stored, compressed, and loaded onto trailers. Defendant and his brother welded machine presses that pressed the marijuana into compact bundles and welded hidden compartments on flatbed trailers and horse trailers in which marijuana was concealed. Defendant helped move loads of marijuana from his ranch to other locations, supervised ranch

1

hands, and tasked them with the packaging and loading of marijuana onto trailers. He also used his teenaged son as a lookout and a packer and loader of marijuana.

In 2019, Defendant pled guilty to conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. He was held accountable for 22,510.55 kilograms of marijuana and received sentencing enhancements because he possessed a dangerous weapon (a .45 caliber pistol) and because his property was used to store, package, and distribute marijuana. Defendant has served 17 months (13%) of his 135-month sentence and has a projected release date, after good time credit, of July 24, 2029. He now moves the Court for compassionate release because his underlying medical conditions (type 2 diabetes with diabetic neuropathy, high blood pressure, high cholesterol, obesity, and former smoker) make him particularly vulnerable to severe illness or death should he contract COVID-19 in prison. He also wishes to return home to help provide and care for his family, especially his disabled daughter. Defendant's pro bono attorney submitted an administrative request for compassionate release and/or home confinement to the warden on June 18, 2020, but says he never received a response.

The Government opposes compassionate release because: (1) Defendant's COVID-related concerns do not constitute extraordinary and compelling reasons for his sentence to be reduced; (2) he has failed to show that the Bureau of Prisons is incapable of managing the pandemic; (3) he is a risk to public safety; and (4) releasing him when he has served so little of his sentence would be inconsistent with the § 3553 factors.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.—**The court may not modify a term of imprisonment once it has been imposed except that—

>  (1) in any case—
>  (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>  (i) *extraordinary and compelling reasons warrant such a reduction* . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

"Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, — Fed. App'x —, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020)).

>  **(A) Medical Condition of the Defendant.—**
>  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>  (ii) The defendant is—
>  (I) suffering from a serious physical or medical condition,
>  (II) suffering from a serious functional or cognitive impairment, or
>  (III) experiencing deteriorating physical or mental health because of the aging process,
>
>  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>  **(B) Age of the Defendant. –**
>  The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

>> (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;
>
> **(C) Family Circumstances. –**
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D) Other Reasons. –**
> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to

deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>
> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**III. ANALYSIS**

Defendant is 52 years old and suffers from type 2 diabetes with diabetic neuropathy, high blood pressure, high cholesterol, and obesity. He is also a former smoker. There is no doubt that Defendant's underlying medical conditions make him particularly vulnerable to severe illness or death should he contract COVID-19 in prison.[1] However, as of his most recent filing on January 7, 2021, Defendant had already received his first dose of the Pfizer-BioNTech COVID-19 vaccine, and there is nothing to indicate that he was unable to receive a second dose as scheduled. At least one court in this circuit has already denied compassionate release to a high-risk inmate with myriad underlying medical conditions who received the same vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection." *United States v. Isidaehomen*, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021). The Court agrees and finds no merit to Defendant's claim that, "even after being administered both doses, the level and length of protection offered to [him] is highly uncertain." D.E. 598, p. 10. "Based on evidence from clinical trials, the Pfizer-BioNTech vaccine was 95% effective after two doses at preventing laboratory-confirmed

---

1. According to the Centers for Disease Control and Prevention (CDC), older adults (age 65 and above) and people of any age who have certain underlying medical conditions are at higher risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. People of any age with the following conditions *are* at increased risk of severe illness from COVID-19: Cancer, Chronic kidney disease; COPD (chronic obstructive pulmonary disease); Down Syndrome; Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Immunocompromised state from solid organ transplant; Obesity; Pregnancy; Severe Obesity; Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Sickle cell disease; Smoking; and Type 2 diabetes mellitus. People with the following conditions *might be* at an increased risk for severe illness from COVID-19: Asthma (moderate-to-severe); Cerebrovascular disease; Cystic fibrosis; Hypertension; Immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; Neurologic conditions, such as dementia; Liver disease; Overweight; Pulmonary fibrosis; Thalassemia; and Type 1 diabetes mellitus.

COVID-19 illness in people without evidence of previous infection." *Isidaehomen*, 2021 WL 243458 at *3.[2]

The Court finds that Defendant has failed to demonstrate that extraordinary and compelling circumstances warrant his release and that the § 3553(a) factors, as considered in the specific context of the facts of his case, do not warrant a reduction in his sentence. Defendant was an essential part of a major DTO that transported at least 22,000 kilograms of marijuana from the Rio Grande Valley throughout Texas and Louisiana over the course of a decade. Releasing Defendant after he has served only a fraction of his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) (D.E. 578) is **DENIED**.

It is so **ORDERED** this 1st day of February, 2021.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

---

2. *See also Pfizer-BioNTech COVID-19 Vaccine Frequently Asked Questions*, US FDA, https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/pfizer-biontech-covid-19-vaccine-frequently-asked-questions (last visited Feb. 1, 2021) ("The vaccine was 95 percent effective in preventing COVID-19 disease among [36,523] clinical trial participants with 8 COVID-19 cases in the vaccine group and 162 COVID-19 cases in the placebo group. Of these 170 COVID-19 cases, 1 in the vaccine group and 3 in the placebo group were classified as severe.").